*The inventory of the Goods of* ANDREW J. BUTLER.

WHERE an executor was ordered to file an inventory of property out
of this State, and he appealed, and the Court of Appeals sustained
the order, an attachment will be ordered on the *remittitur*.

JOHN K. HACKETT *and* JOHN E. DEVELIN, *for Executor.*

THE SURROGATE. Benjamin F. Butler proved the will
of Andrew J. Butler, deceased, and took letters testa-
mentary on the 14th November, 1864. On the 20th July,
1865, the Surrogate summoned the executor to file an
inventory.

The statutes of New York direct that every executor
" shall, with the aid of appraisers, make a true and perfect
inventory of all the goods and chattels and credits of his
testator, and where the same shall be in different and

distant places, two or more such inventories as may be necessary."

If the executor neglect to return such inventory within a reasonable time after qualifying, or within such further time, not exceeding four months, as the Surrogate shall, for reasonable cause, allow, it is made obligatory upon the Surrogate to summon the executor; and if the latter do not, by the day appointed, return such inventory, or obtain further time to return the same, the Surrogate is required to attach him and commit him to the county jail.

(Compare 3 *R. S.*, *5th ed.*, *p.* 169, § 2, *and p.* 170, §§ 19, 20.)

The executor appeared, applied for the appointment of appraisers, and the latter were duly appointed and sworn. The appraisers footed up an inventory, amounting to $76,391.04, and accompanied it with the following report to the Surrogate:

*To the Surrogate of the County of New York :*

The undersigned, Algernon S. Sullivan and Theodore Martine, who were appointed appraisers in the matter of making and filing the inventory of said estate, respectfully report:

In company with Benjamin F. Butler, the executor of said estate, we have, at the time and place appointed by the Court, engaged in the work of making said inventory, and, so far as the property was submitted to us, we have duly appraised the same, and the inventory thereof is prepared to be filed.

As officers of the Court, however, and vested with the trust which pertains thereto, as guardian of the property of all decedents within its jurisdiction, we deem it to be within the line of our duty to report that a serious difference of opinion exists between said executor and the appraisers, as to what said inventory shall contain. In our opinion, the inventory now made herein is

incomplete, and does not fulfill the requirements of the statute.

We think that the law requires the executor to file in this Court an inventory of all the "goods, chattels and credits" of which the deceased died possessed, which have come to the knowledge of the executor. The domicile of the testator was in New York at the time of his death.

From the statement of the executor, it appears that very far the largest portion of the estate consists of claims and credits against persons who reside in other States, and he does not include any of these in the inventory, nor does he include any other personal property situated in other States, although there is such property in his knowledge.

Our object being simply to submit the matter for adjudication to the Court, we add that the executor, who was in company with his counsel, stated to us that it was upon the opinion and advice of said counsel that he omitted from the inventory and declined to exhibit for appraisement any other property than that which was actually within this State, or, in the case of credits, where the debtor resided in this State.

The counsel also stated that the course to which they had thus advised their client, was, in their opinion, in accordance with the law, and we deem it to be right that we shall include that fact in our report.

The grounds upon which we differed with the executor we briefly stated to him and his counsel.

As representative of the deceased, his executor has the same property in the effects as the principal had when living.

With respect to debts, the right of action, on which the testator might have sued in his lifetime, survives his death and is transmitted to his executor. The right to personal property is in law so incorporated with the person, that when speaking of it as assets, in respect to locality, it must be said to belong where the person owning it resides. It

does not militate against our view to admit that an executor can only enforce his rights in respect to property in another State, by previously procuring ancillary letters of administration in such other State ; an ordinary creditor suing in a foreign State, must also give certain bonds of indemnity for costs.

The article of the Revised Statutes upon the duties of executors in returning inventories, provides that the executors, with the aid of appraisers, shall make " a true and perfect inventory of all the goods, chattels and credits" of the testator ; all debts and accounts shall be deemed assets to be inventoried ; and the inventory shall contain a particular statement of all bonds, mortgages and other securities for the payment of money belonging to the deceased, which are known to such executor.

In the present case, then, property of the deceased—as well goods as credits—is known by the executor to be in existence. He declines to exhibit that property for appraisement, and to be inventoried herein, for the reason above stated.

The appraisers have not had such property " exhibited " to them, so that they can appraise it, and the question of difference in respect thereto can only be decided by the Court.

NEW YORK, *August 22d*, 1865.

ALGERNON S. SULLIVAN,
THEODORE MARTINE,

*Appraisers.*

The Surrogate thereupon made an order reciting that the executor having filed an inventory, and it appearing that there are other assets belonging to said estate, situate in the States of Massachusetts, Louisiana and California, it was ordered that said executor return a further inventory, which should include the assets so as aforesaid situated in said other States, and that it be filed on or before the 30th August, 1865.

From this order the executor appealed, making the Surrogate the respondent, filing a bond of appeal in the Surrogate's office, and entering an order in the Supreme Court requiring the Surrogate to answer the petition of appeal within twenty days, or that the appellant be heard *ex parte.*

The Surrogate consequently responded and appeared by counsel, viz., Hon. Wm. B. Aitken, chief clerk in the Surrogate's office. On the 16th December, 1867, the Supreme Court affirmed the order of the Surrogate, and on the 17th January, 1868, the executor appealed to the Court of Appeals. On the 31st December, 1868, that Court affirmed the judgment of the Supreme Court, with costs.

The point is thus definitely settled, that the intent of the Revised Statutes is to require of every executor or administrator an early and full inventory of all personal property wherever situated; and that the higher Courts will aid the Surrogate in enforcing the plain letter of the law. The Surrogate had purposely made this a test case, inasmuch as a large number of the profession, and of the public in general, appear to have believed that an inventory of personalty, situate outside of this State, was not required by our laws. How such a conclusion was arrived at cannot well be understood; for no sections of the Revised Statutes are plainer, or less capable of misconstruction than those I have referred to, and if they mean anything, they must mean precisely what the learned Chief Judge (Hunt) of the Court of Appeals, in his opinion in this case, has declared to be their meaning.

The executor is now in default in not having filed the additional or further inventory required by the order appealed from. An order will be entered that he file the further inventory within twenty days, or be attached.